

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-15-00281-CV

HSM WYNNGATE 04, LTD                        APPELLANT

V.

TEXAS SOTHERBY HOMES, INC.,           APPELLEE
F/K/A SHADDOCK BUILDERS AND
DEVELOPERS, INC. D/B/A
SOTHERBY HOMES

----------

### FROM THE 367TH DISTRICT COURT OF DENTON COUNTY
### TRIAL COURT NO. 2013-50941-367

----------

## MEMORANDUM OPINION[1]

----------

Appellant HSM Wynngate 04, Ltd. (HSM) appeals from the trial court's final judgment granting summary judgment in favor of Appellee Texas Sotherby Homes, Inc., f/k/a Shaddock Builders and Developers, Inc. d/b/a Sotherby

---

[1]*See* Tex. R. App. P. 47.4.

Homes (Sotherby) on HSM's declaratory judgment claim and awarding Sotherby interpleaded funds held in the trial court's registry. We affirm.

**Background**

In 2005, HSM and Sotherby[2] entered into a contract for the development and purchase of sixty-one single family lots in the WynnGate Subdivision in Frisco, Texas. Pursuant to the contract, Sotherby deposited $140,000 in earnest money with American Title Company. The contract provided that after Sotherby purchased thirty lots, the earnest money deposit would be reduced to $70,000, which was to "remain on deposit under the control of the title company and applied to the purchase of the last lot or lots to be purchased [under the contract]." The contract further provided that "[i]f this Contract is terminated prior to the Closing of all the Lots, the Earnest Money Deposit then on deposit shall be delivered to Seller or returned to Purchaser by the Title Company as elsewhere provided herein."

The contract also set out each party's remedies in the event of the other party's default. In the event of Sotherby's default, the contract provided the following remedies to HSM:

---

[2]At the time the contract was executed, Sotherby was Shaddock Builders and Developers, Inc.

2

### 3.02  PURCHASER'S OBLIGATIONS

. . . .

(b)    Should Purchaser fail to consummate this Contract with respect to any particular Lot or Lots within the time specified above, for any reason except default hereunder by Seller, <u>Seller shall, as Seller's sole and exclusive remedy hereunder, have the right to terminate this Contract and to retain the Earnest Money then on deposit.</u>  Seller may enforce specific performance on only the first twelve (12) Lots to be closed by Purchaser under this Contract and waives any other remedies which might be available to it upon default by Purchaser, <u>except for Seller's right to terminate this Contract and receive and retain the Earnest Money then on deposit as liquidated damages for such default and not as a penalty</u>.

. . . .

**5.01  SELLER'S REMEDIES.**  In the event that Seller shall fulfill all of Seller's obligations pursuant to this Contract, should Purchaser breach any term of this Contract, <u>Seller shall be entitled, as Seller's sole and exclusive remedy to</u> (i) waive the contractual obligations of Purchaser in writing; or (ii) extend the time for performance by such period as may be mutually agreed upon in writing by the Parties hereto; or (iii) <u>terminate this Contract as to all un-purchased Lots and receive the Earnest Money then on deposit as liquidated damages for such default and not as a penalty as the sole and exclusive remedy of Seller</u>, in which event the Parties shall be released here from and have no further rights, obligations or responsibilities hereunder.  [Emphasis added.]

Paragraph 9 of the contract provided that each party was entitled to written notice of any default and would have fifteen days from the receipt of the notice to cure the default prior to the exercise of any remedy provided in the contract.

Sotherby failed to purchase all sixty-one lots.  On April 13, 2009, HSM sent a letter to Sotherby stating as follows:

> The purpose of this letter is to furnish Purchaser with written Notice of Default of Purchaser's obligations under the above

referenced Contract and to invoke the fifteen (15) day period to allow cure of such default provided under paragraph 9 of the Contract.

> In accordance with paragraph 3.02(a) of the Contract, Purchaser was obligated to have purchased and closed all sixty-one (61) Lots under the Contract on or before 4-18-2008. As of the date hereof, Purchaser has closed on only fifty-two (52) of such Lots leaving nine (9) Lots contracted to be purchased and closed. Demand is hereby made on Purchaser to purchase and closed [sic] the remaining nine (9) Lots on or before the expiration of the allowed period to cure such default (being the date of 5-28-2009).[3]

> In the event that Purchaser fails to cure the above described default on or before the date noted, Seller will exercise its available remedies in accordance with paragraph 5.01 of the Contract and applicable law including termination of Purchaser's rights under the Contract and demand forfeiture and delivery to Seller of Purchaser's remaining Earnest Money Deposit.

HSM claims Sotherby did not cure its default, but HSM took no action to recover the earnest money deposit.

By letter dated February 13, 2013, American Title Company's successor in interest, Capital Title of Texas, LLC (Capital Title), informed Sotherby and HSM that $70,167.33 in earnest money remained on deposit and requested instructions from the parties on how to disburse the funds. In response, on April 11, 2013, HSM sent a letter to Sotherby stating, in part,

> Seller has previously notified Purchaser that it has been and continues to be in default under the terms of the Contract for failure to purchase lots in the WynnGate Subdivision as required by the Contract and such default was not cured during the applicable cure period provided by the Contract.

---

[3]It appears that the May 28, 2009 cure deadline was an error because the contract provided the parties only fifteen days to cure any default.

4

Seller has terminated the Contract and demands that the earnest money ("Earnest Money") now held in connection with the Contract by Capital Title . . . in the approximate amount of $70,167.33, together with any and all interest earned on the Earnest Money, be immediately disbursed to Seller.

HSM sent Sotherby another letter on May 24, 2013, reiterating its demand for the earnest money and threatening litigation if Sotherby did not comply.

On December 13, 2013, HSM filed a declaratory judgment action against Sotherby and Capital Title, seeking a declaration as to the parties' rights, duties, and obligations under the contract and a judgment ordering Sotherby and Capital Title to release the earnest money and all accrued interest thereon to HSM. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001–.11 (West 2015). Capital Title filed an interpleader petition and deposited the earnest money into the trial court's registry. The trial court signed an agreed order on the interpleader petition dismissing all claims against Capital Title.

In its answer, Sotherby pled that HSM's claims were barred by limitations and claimed that it was entitled to the interpleaded funds and attorney's fees. Sotherby then moved for summary judgment on its affirmative defense. After a hearing at which the trial court indicated that it was going to grant Sotherby's motion, Sotherby filed a motion for release of the interpleaded funds from the court registry and for attorney's fees. The trial court then signed an order granting Sotherby's motion for summary judgment. HSM moved for rehearing, and after a hearing, the trial court denied the motion for rehearing. The trial court

5

entered a final judgment against HSM awarding the interpleaded funds and $17,290 in attorney's fees to Sotherby. HSM has appealed.

## Limitations

In the first part of its sole issue, HSM contends the trial court erred by granting summary judgment based on the statute of limitations.

We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). A defendant is entitled to summary judgment on an affirmative defense if the defendant conclusively proves all the elements of the affirmative defense. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508–09 (Tex. 2010), *cert. denied*, 562 U.S. 1180 (2011); *see* Tex. R. Civ. P. 166a(b), (c). To accomplish this, the defendant-movant must present summary judgment evidence that conclusively establishes each element of the affirmative defense. *See Chau v. Riddle*, 254 S.W.3d 453, 455 (Tex. 2008).

In its motion, Sotherby asserted HSM's declaratory judgment claim was barred by the four-year statute of limitations. Both parties agree that a four-year

6

limitations period applies to HSM's claims. Because a declaratory judgment action is a procedural device used to determine substantive rights, we must look to the legal remedy underlying the cause of action to determine the applicable limitations period. *Nw. Austin Mun. Util. Dist. No. 1 v. City of Austin*, 274 S.W.3d 820, 836 (Tex. App.—Austin 2008, pet. denied). Here, HSM is seeking the earnest money as liquidated damages for Sotherby's default pursuant to the terms of contract. An action for breach of contract is governed by a four-year statute of limitations. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.051 (West 2015); *Smith v. Ferguson*, 160 S.W.3d 115, 123 (Tex. App.—Dallas 2005, pet. denied). Thus, we agree with the parties that the four-year limitations period applies.

Limitations begin to run when a cause of action accrues, and the date of accrual is a question of law. *Waxier v. Household Credit Servs., Inc.*, 106 S.W.3d 277, 279 (Tex. App.—Dallas 2003, no pet.). A cause of action under the declaratory judgments act does not accrue until there is an actual dispute or controversy between the parties. *In re Estate of Denman*, 362 S.W.3d 134, 144 (Tex. App.—San Antonio 2011, no pet.). Accordingly, Sotherby had to prove as a matter of law when the actual dispute or controversy on the issues raised in HSM's declaratory judgment claim arose and prove HSM's petition was filed more than four years after the controversy arose. *See id.* at 144–45.

In its motion for summary judgment, Sotherby argued that the controversy between the parties accrued in either April 2009 (when HSM sent Sotherby the

7

notice of default) or in May 2009 (when the "cure period" expired without cure). HSM asserted in the trial court and contends on appeal that (1) no justiciable controversy existed until it demanded a release of the earnest money deposit in 2013 and Sotherby refused to authorize the release of the earnest money deposit from Capital Title and (2) Sotherby's April 13, 2009 default under the lot purchase contract constituted a mere theoretical dispute as to the earnest money prior to HSM's demand for the earnest money deposit in 2013.

We agree with Sotherby that an actual dispute or controversy existed between the parties when Sotherby failed to cure its default in response to HSM's April 2009 letter in which HSM recognized Sotherby's default, HSM's remedies, and the date by which HSM was entitled to seek those remedies. *Cf. Drexel Corp v. Edgewood Dev., Ltd.*, 417 S.W.3d 672, 674–75 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (concluding that client's declaratory judgment action against real estate broker as to when payment for broker's services were due presented a justiciable controversy and was ripe where broker sent demand letter to client asserting $12 million was "due and owing" under the contract but client contended that broker's interpretation of the contract was incorrect and denied that it owed broker the payment demanded); *Mackie v. Guthrie*, 78 S.W.3d 462, 467 (Tex. App.—Tyler 2001, pet. denied) (holding plaintiff had standing to maintain a declaratory judgment action where plaintiff received a demand letter from defendant and the declarations sought by plaintiff would prevent defendant from recovering under the contract). When Sotherby failed to

8

cure its default, HSM had the right to terminate the contract and receive the earnest money then on deposit as liquidated damages for Sotherby's default. HSM did not file its declaratory judgment action until December 2013, more than four years after the actual dispute or controversy arose. Thus, Sotherby established its affirmative defense as a matter of law, and the trial court did not err by granting Sotherby's motion for summary judgment. Accordingly, we overrule the first part of HSM's only issue.

**The Interpleaded Funds**

In the second part of its sole issue, HSM argues that Sotherby failed to satisfy its burden of establishing its right to the interpleaded funds. Sotherby had the burden to prove its right to the interpleaded funds. *See Westbrook Constr. Co. v. Fidelity Nat'l Bank of Dallas*, 813 S.W.2d 752, 754 (Tex. App.—Fort Worth 1991, writ denied); *see also Marine Indem. Ins. Co. of Am. v. Lockwood Warehouse & Storage*, 115 F.3d 282, 289 (5th Cir.) (stating that a claimant to interpleaded funds has a burden of establishing its right to them by a preponderance of the evidence), *cert. denied*, 522 U.S. 967 (1997); *Johnson v. Structured Asset Servs., LLC*, 148 S.W.3d 711, 726 (Tex. App.—Dallas 2004, no pet.) ("In an interpleader action, each party making a claim to the funds at issue bears the burden of establishing his right to the funds.").

HSM argues that Sotherby's claim to the interpleaded funds is barred by a four-year statute of limitations and that Sotherby, as the depositor, did not retain equitable title to the earnest money because upon depositing the funds into

9

escrow, Sotherby lost control over the earnest money, and equitable title to the earnest money vested in HSM. HSM also argues that Sotherby was not entitled to the interpleaded funds under section 3.02(b) of the contract, which provides as follows:

> Should Purchaser fail to consummate this Contract with respect to any particular Lot or Lots within the time specified above, for any reason except default hereunder by Seller, Seller shall, as Seller's sole and exclusive remedy hereunder, have the right to terminate this Contract and to retain the Earnest Money then on deposit. Seller . . . waives any other remedies which might be available to it upon default by Purchaser, except for Seller's right to terminate this Contract and receive and retain the Earnest Money then on deposit as liquidated damages for such default and not as a penalty.

"Texas courts hold that when a grantor executes an escrow agreement and deposits the subject matter into escrow, he retains legal title to the subject matter, with equitable title passing to the ultimate grantee." *In re Missionary Baptist Found. of Am., Inc.*, 792 F.2d 502, 504 (5th Cir. 1986) (citing *Cowden v. Broderick & Calvert*, 131 Tex. 434, 114 S.W.2d 1166 (Tex. 1938); *Hudgins v. Krawetz*, 558 S.W.2d 131, 134 (Tex. Civ. App.—San Antonio 1977, no writ)). In addition, "Texas escrow law provides that a party who deposits funds in escrow relinquishes control over those funds." *In re AFI Servs., LLC*, 486 B.R. 827, 838 (Bankr. S.D. Tex. 2013) (citing *Day v. Townsend*, 238 S.W. 213, 215 (Tex. Comm'n App. 1922, holding approved); *Cutbirth v. Snowden*, 252 S.W.2d 477, 482 (Tex. Civ. App.—El Paso 1952, writ ref'd n.r.e.)). Thereafter, "[t]he ultimate disposition of the subject matter to the grantor or grantee is determined by the

terms of the agreement, upon fulfillment of the necessary conditions." *Missionary Baptist Found. of Am.*, 792 F.2d at 504.

As the depositor, Sotherby retained legal title to the earnest money unless and until HSM proved it was entitled to it under the terms of the contract. Because HSM's declaratory judgment action asking the trial court to determine the parties' rights, duties, and obligations under the contract—including a declaration that Sotherby defaulted under the contract and that HSM was entitled to the earnest money under the terms of the contract—is barred by limitations, HSM did not establish that it was entitled to the earnest money under the terms of the contract. And we need not determine whether Sotherby's claims to the earnest money under the terms of the contract are barred by limitations because even if they were, Sotherby, as the depositor, retained legal title to those funds. In this particular instance, Sotherby's legal title to the funds prevails over HSM's equitable title. *See* Black's Law Dictionary 1713 (10th ed. 2014) (defining "equitable title" as "[a] title that indicates a beneficial interest in property and that gives the holder the right to acquire formal legal title" and "legal title" as "[a] title that evidences apparent ownership but does not necessarily signify full and complete title or a beneficial interest"); *see also id.* at 934 (defining "beneficial interest" as "[a] right or expectancy in something . . . as opposed to legal title to that thing"). Accordingly, Sotherby established by a preponderance of the evidence that it was entitled to the interpleaded funds; therefore, the trial court

did not err by awarding them to Sotherby.  We overrule the remainder of HSM's sole issue.[4]

## Conclusion

Having overruled HSM's sole issue on appeal, we affirm the trial court's judgment.

/s/ Anne Gardner
ANNE GARDNER
JUSTICE

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and GARDNER, JJ.

DELIVERED:  August 31, 2016

---

[4]HSM also argues for the first time on appeal that Sotherby's limitations argument is essentially an assertion that HSM forfeited or waived its right to the earnest money.  HSM never presented this argument to the trial court, thereby failing to preserve it for our review.  *See* Tex. R. App. P. 33.1.